WILLSON R. CAMPBELL, Plaintiff, *v.* THE CUNNINGHAM NATURAL
GAS CORPORATION, Defendant.

Supreme Court, Steuben County, August 12, 1937.

*Michael H. Cahill*, for the plaintiff.

*William D. Gallup, E. G. Potter* and *James P. Quigley* [*James P. Quigley* of counsel], for the defendant.

VAN VOORHIS, J. The complaint alleges that in 1936 and 1937 plaintiff was twice indicted in Federal court, one indictment charging conspiracy to defraud the United States government and the stockholders of the Commercial National Bank of Bradford, Penn., and the other indictment charging conspiracy to use the United States mails to defraud stockholders of the Commercial National Bank of Bradford, Penn.; that the first of these indictments was dismissed by the court, and that the second resulted in an acquittal by the jury. It is further alleged that as a result of these indictments plaintiff was injured in his name and reputation, that he lost the Republican nomination for State Comptroller, that he and his family were held up to public scorn and ridicule, and that he suffered great mental anguish and bodily distress as well as impairment of earning capacity, by reason whereof and by reason of the expenses of defending against said criminal prosecutions, he claims to have been damaged in the sum of $250,000, for which judgment is demanded against the defendant.

The complaint alleges that plaintiff was so indicted "as a director" of the defendant corporation as a result of a series of fraudulent transactions carried on by the defendant through its treasurer, commencing between January 30, 1933, and September, 1935. It is further alleged that plaintiff was elected a director of defendant on July 11, 1931, and continued to be a director thereof until January 27, 1933, at which time he forwarded a letter of resignation to the defendant which was received by the defendant January 30, 1933. On August 5, 1933, he was formally re-elected as a director of defendant at a stockholders' meeting held on that date.

Paragraph sixth of the complaint states as follows: "Upon information and belief that, due to the carelessness and negligence of the officers, servants and employees of the said defendant corporation, the said letter of resignation of the plaintiff, Willson R. Campbell, as a director of said Cunningham Natural Gas Corporation, was not entered in the minutes of, nor acted upon by, the Board of Directors of said defendant corporation; and that as a result of the further negligence and carelessness of the officers

and employees of said defendant corporation, and notwithstanding said resignation of the plaintiff, said Willson R. Campbell, that the said officers and directors and employees of said defendant corporation, without the consent of, and without any notice to, said Willson R. Campbell, on August 5, 1933, placed said Willson R. Campbell's name in nomination for a director of said Cunningham Natural Gas Corporation at a stockholders' meeting held at the Village of Bath, Steuben County, New York, on that date, and that, as a result of this illegal procedure, said Willson R. Campbell, the plaintiff, was, without his knowledge or consent, again re-elected a director of said Cunningham Natural Gas Corporation."

Other allegations are contained in the complaint which it is not necessary to refer to for the purpose of this motion. Although no express statements are contained in this pleading that plaintiff's name remained upon the books of the defendant as a director for any specified period of time, or that defendant falsely held him out to be a director, and there is no mention of the time when he learned of the action taken in re-electing him, nor of the length of the term for which he was formerly re-elected, it is stated that he was indicted *as a director*. Allowing to the complaint the liberal interpretation to which it is entitled, it may be assumed for the purpose of this motion that plaintiff's resignation took effect January 30, 1933, without action on the part of the board of directors (*Manhattan Company* v. *Kaldenberg*, 165 N. Y. 1), that his name erroneously remained upon the minute book of the corporation as a director from January 30, 1933, until the date of the next annual meeting on August 5, 1933, and that upon that date his name was re-entered upon the minute book as a director elected for another term, although, in fact, his re-election was ineffectual for the reason that he did not accept the duties of the office (*United Growers Company* v. *Eisner*, 22 App. Div. 1), and that he was not actually a director at any time after January 30, 1933. The clause contained in the complaint that plaintiff was indicted as a director is construed as meaning that he was indicted by the grand jury under the mistaken belief that he was a director during the continuance of the defendant's said fraudulent transactions. There is, to be sure, no allegation that such mistaken belief resulted from plaintiff's name being carried on the minute book as a director, or that the minute book was before either grand jury, or that the defendant by means of its books and records or otherwise informed the grand jury that he was a director. The decision of this motion is not based upon that ground, however, and the complaint is regarded as though it contained an allegation that the minute book

was before each Federal grand jury, and that plaintiff would not have been indicted except for the presence of his name as a director thereon.

The court is of the opinion that no cause of action by the plaintiff against the defendant can be sustained upon the principles of negligence, which is the only theory of liability disclosed by the complaint. Before a cause of action can lie in negligence to recover compensation for personal injuries, a duty must have been in existence on the part of the defendant for the benefit of the plaintiff to exercise reasonable care to protect the plaintiff, or a class to which he belongs, against the harm which he has suffered. The existence of such a duty in a particular case depends upon whether or not the risk of sustaining the harm which has been suffered was of such a nature as to have been reasonably anticipated in common experience as a consequence of the negligent act. " The risk reasonably to be perceived defines the duty to be obeyed." (*Palsgraf* v. *Long Island R. R. Co.*, 248 N. Y. 339, 344.)

In a certain sense there was an obligation on the part of the defendant to keep its minute book accurately, which defendant was remiss in discharging. Duty is, however, a term having different meanings in different contexts. In order to determine whether the defendant is liable to the plaintiff for negligence, it is necessary to determine at the outset not whether defendant could have been compelled to correct its records, nor whether it exercised ordinary care in keeping them, but whether plaintiff's being indicted was a danger which would reasonably be anticipated as a consequence of the mistake.

The rule that the existence of a duty to exercise reasonable care for the protection of another depends upon whether the risk to be guarded against is one which would normally be foreseen is well established in the law of negligence. (*Palsgraf* v. *Long Island R. R. Co.*, supra; *Hulburt* v. *Walker*, 258 N. Y. 8, 19; *Benenson* v. *National Surety Co.*, 260 id. 299, 302, 303; *Jaillet* v. *Cashman*, 235 id. 511; *Courteen Seed Co.* v. *Hongkong & S. B. Co.*, 245 id. 377; *Ultramares Corp.* v. *Touche*, 255 id. 170; *International Products Co.* v. *Erie R. R. Co.*, 244 id. 331; *Glanzer* v. *Shepard*, 233 id. 236; *McPherson* v. *Buick Motor Co.*, 217 id. 382; *Thomas* v. *Winchester*, 6 id. 397.)

It is not necessary to tabulate the particular facts presented in each of these decisions and in the many cases cited in the opinions therein, which are written with great force and clarity.

The court has been unable to find any case where a duty has been held to exist to use reasonable care to protect the plaintiff against dangers so remote as in the case at bar.

To enable the plaintiff to succeed under the principles of these decisions it must be held that the conduct of defendant's treasurer resulting in the indictment of its directors was something which from ordinary experience in the affairs of men ought to have been anticipated as the natural consequence of the failure to note plaintiff's resignation and of the action of the stockholders' meeting in re-electing him as a director. The nature and quality of the acts of defendant's treasurer, which it is claimed resulted in the indictment of the directors, indicates that they would not usually have been foreseen. They were criminal acts. It has frequently been held that no duty lies to use reasonable care to forestall the consequences of criminal conduct. (*Saugerties Bank* v. *Delaware & Hudson Co.*, 236 N. Y. 425, 431; *Benenson* v. *National Surety Co.*, 260 id. 299.)

In the latter case it is stated (pp. 302–303): " The defendant was under no duty to the world at large to safeguard its own property from theft, at least, unless the possibility that the property would be stolen and then used by the thief to injure another constituted a hazard which a reasonable man would have foreseen and guarded against. ' Under ordinary circumstances no one is chargeable with damages because he has not anticipated the commission of a crime by some third party.' (*Saugerties Bank* v. *Delaware & Hudson Co.*, 236 N. Y. 425, 431.) "

It was said in *Courteen Seed Co.* v. *Hongkong & S. B. Co.* (*supra*, p. 381) per POUND, J.: " The court has had to deal recently with cases involving liability for information negligently given. They all rest upon the principle that negligent words are not actionable unless they are uttered directly with knowledge or notice that they will be acted on, to one to whom the speaker is bound by some relation of duty, arising out of public calling, contract or otherwise, to act with care if he acts at all." ( *Ultramares Corp.* v. *Touche*, *supra*, pp. 180, 185.)

It is not necessary now to pass upon whether it would change the result if the complaint had alleged that plaintiff's name was retained upon the directorate for the purpose of assisting the defendant in a stock selling campaign. Such a statement involves implications of intentional wrongdoing, but whether it would support a cause of action against defendant for damages for personal injuries resulting from the indictment of the plaintiff is left to future decision when and if the question arises.

A further reason presented itself on account of which the complaint must be dismissed. Plaintiff's previous resignation imposed no duty upon the stockholders to refrain from re-electing him. The charge that plaintiff was placed in nomination at the stock-

holders' meeting "by officers and directors and employees" is untenable. The action taken at the meeting was necessarily that of the stockholders and not that of agents of the corporation. The complaint intimates that his resignation was not brought before the stockholders' meeting, and that if it had been, the election would have resulted differently. This is pure speculation. After the stockholders' meeting, his name was necessarily carried on the books as a result of the action taken by the stockholders and not on account of the earlier omission of some officer or employee to enter his resignation. Inasmuch as the complaint alleges that the series of fraudulent transactions resulting in the indictments commenced at some time prior to September, 1935, viz., two years after the stockholders' meeting at which plaintiff was re-elected, it would appear that he was injured by his re-election rather than by the previous failure to note his resignation. At most, either may have been true under the language of the pleading, and the version must, therefore, be adopted which accords with the absence of liability. (*Ruppert* v. *Brooklyn Heights R. R. Co.*, 154 N. Y. 90, 94.)

The complaint can be searched in vain for any charge of intentional wrongdoing against the plaintiff on the part of the defendant. It is not claimed that the acts of defendant toward plaintiff were deliberate, willful or malicious, that they were motivated by any conscious design to injure the plaintiff or even by a reckless disregard for his safety. Various grounds of liability suggest themselves which have not been invoked, such as malicious prosecution, libel, or action on the case for special damages for non-defamatory words. If defendant through its agents, without probable cause, falsely and maliciously placed before the Federal grand jury that plaintiff was a director and thereby instigated the indictments, an action might lie for malicious prosecution. (*Burt* v. *Smith*, 181 N. Y. 1; *Al Raschid* v. *News Syndicate Co., Inc.*, 265 id. 1.)

The indictment is *prima facie* evidence of probable cause (*Hopkinson* v. *Lehigh Valley R. R. Co.*, 249 N. Y. 296, 300), and no cause of action can be stated which does not set forth particular facts overcoming this presumption even though it be alleged that the charges before the grand jury were made falsely, maliciously and without probable cause. (*Levy* v. *Chasnoff*, 245 App. Div. 607; *Green* v. *General Cigar Co., Inc.*, 238 id. 638; *Hopkinson* v. *Lehigh Valley R. R. Co., supra.*)

If defendant by entries in its minute book, intentionally false, published to the Federal district attorney or the grand jury that plaintiff was a director with the result that he became indicted for conspiracy, a cause of action might be pleaded in libel. But actual malice must be stated both for the reason that such a com-

munication is protected by qualified privilege (*Pecue* v. *West*, 233 N. Y. 316), and that it is not libelous *per se* (*Caldwell* v. *Raymond*, 2 Abb. Pr. 193, 196–197).

If the publication was not defamatory and, therefore, not libelous *per se* or *per quod*, an action on the case can still be prosecuted. (*Husted* v. *Husted Co.*, 193 App. Div. 493.) Even so, malice must be the foundation, exerted in an effort to produce the damage wrought. (*Al Raschid* v. *News Syndicate Co., Inc., supra.*)

These various forms of liability, so closely related to the facts involved in the present action, but whose requirements are not met by the complaint, confirm the view that the complaint fails to state a cause of action. The language used in *Ultramares Corp.* v. *Touche (supra)*, per CARDOZO, Ch. J. (pp. 186–187), is not inappropriate: " If this action is well conceived, all these principles and distinctions, so nicely wrought and formulated, have been a waste of time and effort. They have even been a snare, entrapping litigants and lawyers into an abandonment of the true remedy lying ready to the call. The suitors thrown out of court because they proved negligence, and nothing else, in an action for deceit, might have ridden to triumphant victory if they had proved the self-same facts, but had given the wrong another label, and all this in a State where forms of action have been abolished. So to hold is near to saying that we have been paltering with justice. A word of caution or suggestion would have set the erring suitor right. Many pages of opinion were written by judges the most eminent, yet the word was never spoken. We may not speak it now."

The motion to dismiss the complaint is granted, with ten dollars costs of the motion.