357 F.2d 871
 Richard ATTREAU, Plaintiff-Appellant,
v.
Joseph MORRIS, Francis J. Bailey, Arthur P. Lindsey, Lester M. Anglin, Jesse J. Word, Edwin E. Williams, Alvin J. Palmer, William D. Crowell, David Mozee, Samuel Mosely, Columbus C. Brooks, Jr., Defendants-Appellees.
 No. 15105.
 United States Court of Appeals Seventh Circuit.
 March 21, 1966.
 Rehearing Denied April 19, 1966.
 
 James P. Chapman, Chicago, Ill., for appellant.
 Raymond F. Simon, Corp. Counsel, Sydney R. Drebin, Marvin E. Aspen, Chicago, Ill., for appellees.
 Before SCHNACKENBERG, KNOCH and SWYGERT, Circuit Judges.
 SCHNACKENBERG, Circuit Judge.
 
 
 1
 Richard Attreau, plaintiff, has appealed, from an order of the district court dismissing with prejudice his complaint charging Joseph Morris and other defendants[1] with violating his rights under the federal civil rights act, 42 U.S. C.A. § 1983, and the fourteenth amendment of the constitution of the United States. It is plaintiff's contention that the district court committed error in ruling that the complaint failed to state a cause of action.
 
 
 2
 We now consider the facts as alleged in the complaint.
 
 
 3
 Plaintiff, of Chicago, Illinois, a citizen of the United States, was and is employed by that municipal corporation, as a police officer with the rank of patrolman. Defendants were also police officers of said city and were assigned to the "internal investigation unit" of its police department.
 
 
 4
 With regard to the wrongs complained of, plaintiff avers that defendants were acting in the course of their employment and in performance of their duties as such police officers, under color of the statutes, ordinances, regulations, constitution and usages of the city of Chicago, county of Cook and state of Illinois; and that, on or about February 5, 1962, an anonymous letter to the superintendent of police of the city charged that said defendants and other police officers were guilty of accepting "payoffs" to permit violations of law to take place without police interference, in the Englewood police district. Shortly after receipt of this letter, defendants questioned plaintiff as to any evidence in his possession about misconduct or dereliction of duty by any officer assigned to the Englewood police district and were advised by plaintiff that he had no such knowledge.
 
 
 5
 Thereupon, to embarrass Captain Braband, commanding that district, because of their personal dislike for him and other officers in that district, defendants embarked upon a plot to exculpate themselves from the charges in said letter, and defendants Morris, Bailey and Mozee sought to compel plaintiff to accuse Braband and detective John Sexton, assigned to said district, of malfeasance and misfeasance, threatening plaintiff that they would cause him to be arrested, prosecuted and discharged from his position if he did not make such accusations. When plaintiff refused to accede to these threats, defendants, in furtherance of their plot, in concert did the following things:
 
 
 6
 (1) On March 13, 1962, defendants Morris, Bailey and Mozee arrested plaintiff without a warrant or probable cause or other lawful authority and, with the cooperation of the other defendants, detained him for twelve hours at their unit headquarters. No charges were filed against plaintiff as a result of this arrest and detention.
 
 
 7
 (2) During the arrest on March 13, 1962, defendants threatened to cause plaintiff's imprisonment and discharge from his employment.
 
 
 8
 (3) On May 2, 1962, defendants were instrumental in causing the return of an indictment in the Criminal Court of Cook County against plaintiff, based on perjured testimony, which indictment falsely charged plaintiff with the crime of "Official Misconduct."[2]
 
 
 9
 (4) Defendants were also instrumental in causing the superintendent of police to file charges against plaintiff before the police board. These charges falsely accused plaintiff with violation of certain state criminal statutes and rules and regulations of the police department of the city.
 
 
 10
 (5) Defendants Morris, Bailey, Lindsey, Anglin, Word, Williams, Palmer, Mozee and Mosley caused plaintiff to be suspended from his position as a police officer from the day of his arrest, March 13, 1962, until April 11, 1963, when he was ultimately fully cleared by the police board and restored to duty.
 
 
 11
 The complaint further alleged that on January 27, 1963, plaintiff's case was called for trial in the Criminal Court of Cook County, Illinois, and he, with his counsel, was present and answered that he was ready, but the state's attorney made a motion of nolle prosequi, which was granted, thus ending the proceeding.
 
 
 12
 The complaint asserts that the foregoing constituted a plot against him by defendants under color of law and that he was thereby deprived of his liberty, pursuit of happiness and property without due process of law. In particular, he states that his reputation, credit and standing became a subject of scandal and disgrace among those who knew him and that he incurred expense in procuring his discharge from custody and in defending himself, and lost wages which he would otherwise have earned.
 
 
 13
 Defendants' motion to strike the complaint and dismiss the cause of action is based on two grounds:
 
 
 14
 (1) Plaintiff's complaint is replete with immaterial allegations and conclusions.
 
 
 15
 (2) Plaintiff's complaint does not indicate any violation of 42 U.S.C.A. § 1983 or the fourteenth amendment of the constitution of the United States.
 
 
 16
 1. In this court defendants argue that an invalid arrest is not in and of itself a violation of the federal civil rights act.
 
 
 17
 We are not called upon to decide the correctness of this abstract proposition. The arrest and detention for twelve hours, without a warrant or probable cause or other lawful authority, as alleged in the complaint, accompanied by threats that plaintiff would be imprisoned and discharged from his employment, the procuring of his indictment, his suspension as a police officer for nearly thirteen months, and the charging that plaintiff had violated various statutes and rules and regulations of the police department, must all be considered together in determining whether the complaint sufficiently charges a violation of the civil rights act. We hold that the complaint contains sufficient allegations to support this charge.
 
 
 18
 Our conclusion is not in any way at variance with Magee v. Williams, 7 Cir., 329 F.2d 470 (1964), where we held that a police officer of the city of Chicago could not maintain an action, 28 U.S.C.A. §§ 1331 and 1343, and 42 U.S.C.A. §§ 1981, 1983, 1985 and 1986. There, plaintiff was a city motorcycle policeman who stopped a speeding car driven by one Williams, who was actually a member of the internal investigation division of the Chicago police department (the same organizational unit as here involved). Magee rejected an offer of a bribe by Williams. Magee, believing that he had reasonable grounds for so doing, compelled Williams to submit to a search of his person, by reason of what appeared to be a gun. Thereupon Magee discovered a hidden recording device installed on Williams' person, intended to record Magee's conversation and his anticipated acceptance of a bribe offer. Magee was prevented from taking the recording device from Williams by two other city policemen who came and seized the device, informing Magee that it was police department property. Later Magee was told by a superior officer to release Williams, together with all articles taken from him. Magee did so and returned to his assigned duty.
 
 
 19
 We held that there was no attempted entrapment of Magee and, at page 475, we said:
 
 
 20
 "* * * Therefore, we might be justified in treating as irrelevant the contention that an attempt to entrap him caused him actionable damage under the Civil Rights Act. However, we prefer to meet this contention. How was he damaged? It has not been questioned that the general purpose of Superintendent Wilson and the other defendants was to determine which police officers were dishonest. That determination would afford a basis for discharging such men. This plan obviously, if successful, would operate for the good of the public as well as every honest police officer. Plaintiff claims that he has always had a reputation as such an officer, an assertion which is not disputed. If his reputation was grounded upon fact, he had nothing to fear if, in the operation of the cleansing plan, there was applied to him, as an honest officer, the same test as was applicable to every other officer. If a driver whom he detained for a violation of law offered him a bribe which he refused, he was not damaged. Only by a later tortuously legalistic resort to the doctrine of entrapment was an effort made to demonstrate that he was damaged, because the conversation between plaintiff and the driver had been electronically recorded. The fallacy lies in the fact that in that conversation, according to plaintiff himself, he said nothing inconsistent with his faithful performance of his duty as an honest police officer.
 
 
 21
 "Stated briefly, plaintiff's complaint shows that, when submitted to a fair test designed for all police officers, he proved himself honest. Undoubtedly he was at the time justifiably gratified. Thereafter a prospect for monetary gain appeared and hence this litigation ensued. However, virtue is its own reward. Certainly there is no federal law that a policeman be awarded damages simply because he did his work honestly."
 
 
 22
 Obviously Magee's rights under federal law were not violated. In contrast, the complaint's allegations, which are not now denied in the case at bar, show that plaintiff's rights under federal law were violated.
 
 
 23
 2. But defendants' counsel contend in this court that, as a matter of fact, what plaintiff is really complaining about is not an arrest but simply his co-operative submission to an effective and fair investigation, as required by rule 298 of the police department and its General Order 16(3).
 
 Rule 298 on March 13, 1962 provided:
 
 24
 "Although certain hours are allotted for the performance of regular duty assignments, a police officer is required to respond immediately to any police emergency regardless of when or where it may occur within the corporate boundaries of the City of Chicago and is subject to applicable provisions of the Rules and Regulations of the Department at all times."
 
 
 25
 General Order 16(3), in effect on March 13, 1962, provided, in part:
 
 
 26
 "All personnel of the Department will cooperate fully with the Internal Investigation Division staff, responding to requests for information, records, and reports."
 
 
 27
 The short answer to defendants' contention is that a question of fact may be present as to whether their counsel's present characterization of the conduct of defendants, as appearing in the complaint, is to be believed, or whether plaintiff's characterization thereof is to be believed. This issue requires that defendants answer the complaint, join issues and permit the trier of facts to decide the factual issues. We cannot decide by merely considering defendants' factual contention as stated in their brief. They should be required to file an answer. Coleman v. Johnston, 7 Cir., 247 F.2d 273, 275 (1957).
 
 
 28
 3. Contrary to defendants' argument, we hold that the fact that plaintiff was indicted does not preclude this suit. They cite no federal court decision which supports their argument. Cf. Kozlowski v. Ferrara, 117 F.Supp. 650, S.D. N.Y. (1954). Persuasive, although probably not binding on the federal courts, is the rule announced in Freides v. SaniMode Mfg. Co., 33 Ill.2d 291, 211 N.E.2d 286 (1965), where the Illinois Supreme Court held that the return of an indictment does not grant defendants an absolute defense in a malicious prosecution action. At 296, 211 N.E.2d at 289, that court stated:
 
 
 29
 "An indictment is but a formal accusation of a crime. * * *"
 
 
 30
 Seeking support from Ravenscroft v. Casey, 2 Cir., 139 F.2d 776 (1944), defendants maintain that the grand jury's action under the circumstances of the case at bar "* * * would preclude an action against the persons who caused * * * [plaintiff's] arrest and prosecution for commission of a felony." Ravenscroft was a diversity action for malicious prosecution under New York law. Plaintiff was a citizen of Ohio. The undisputed facts in her amended complaint revealed that plaintiff had been held for the grand jury by a police justice. The United States Court of Appeals, at 778, held this showed the presence of probable cause, under state law, which precluded the action.
 
 
 31
 The case at bar is not a diversity action governed by state law. It is a federal action, and we hold as federal law that the indictment of plaintiff did not preclude this action.
 
 
 32
 For all of these reasons, the order from which this appeal was taken is reversed, and this cause is remanded to the district court for further proceedings in due course.
 
 
 33
 Reversed and remanded with directions.
 
 
 
 Notes:
 
 
 [1]
 Francis J. Bailey, Arthur P. Lindsey, Lester M. Anglin, Jesse J. Word, Edwin E. Williams, Alvin J. Palmer, William D. Crowell, David Mozee, Samuel Mosely, Columbus C. Brooks, Jr
 
 
 [2]
 According to the complaint, since plaintiff did not have possession of the grand jury minutes when the instant action was initiated, he was not able to allege the names of the specific persons who actually falsely accused him before the grand jury
 
 
 
 34
 KNOCH, Circuit Judge (dissenting).
 
 
 35
 I find myself unable to agree with my colleagues in this matter. If we ignore mere conclusory statements, unsupported by specific factual allegation, the complaint in my opinion falls short of setting out a claim on which relief may be granted under the Federal Civil Rights Act. Apart from plaintiff's conclusory statement that he was arrested, his complaint sets out only that plaintiff, a policeman, was detained by other "police officers duly assigned * * * to the `Bureau of Inspectional Service' and a sub-department thereof designated `Internal Investigation Unit' * * *" for a full 8-hour day plus 4 hours of overtime. In his brief, he says that this detention took place at unit headquarters. As a policeman, surely plaintiff was subject to supervision of his official activities. Further than that, plaintiff charges that the defendants threatened to "cause" initiation of unjustified legal proceedings against him and successfully carried out their threats. I would affirm the judgment of the trial court.