John Eric ARKO and Jack Ronald Bisgard, Plaintiffs,

v.

Robert BROOM, as City Manager of the Municipality of Aurora, Colorado; Captain M. R. Walker, individually and as Commander, Staff Inspection Bureau in the Police Department of the City of Aurora, State of Colorado; Thomas Boam, Chief of Police (Retired), individually and as Chief of Police in the Police Department of the City of Aurora; Benny K. Blake, individually and as Chief of Police in the Police Department of the City of Aurora; Sgt. James Farrell, individually and as Commander of Line Support Unit in the Police Department of the City of Aurora; Dennis Champine, Mayor of the City of Aurora; and City of Aurora, Colorado, a Municipal Corporation, Defendants.

Civ. A. No. 80–Z–1054.

United States District Court, D. Colorado.

July 22, 1981.

George A. Hinshaw, Patrick L. Dulaney, Hinshaw & Dulaney, P. C., Aurora, Colo., for plaintiffs.

Patrick E. Kowaleski, Charles H. Richardson, Aurora, Colo., for defendants.

## ORDER DISMISSING COMPLAINT

WEINSHIENK, District Judge.

Plaintiffs, John Eric Arko and Jack Ronald Bisgard, former Aurora City policemen, bring this civil rights action against defendants Robert Broom, Aurora City Manager, Captain M. R. Walker, Commander, Staff Inspection Bureau, Aurora Police Department, Thomas Boam, Retired Aurora Chief of Police, Benny K. Blake, Aurora Chief of Police, Sergeant James Farrell, Commander, Line Support Unit, Aurora Police Department, Dennis Champine, Mayor of Aurora, and the City of Aurora. Plaintiffs claim that defendants instituted and maintained a "pattern of conduct" which exposed them, as officers in the Police Department's Line Support Unit (LSU), to the mandatory use of addictive drugs as a condition of employment. After learning of plaintiffs' consequent clinical psychosis and paranoia, defendants repeatedly ordered plaintiffs to appear for internal investigations and to submit to medical examinations. Plaintiffs assert that defendants' actions have deprived them of their rights to "(1) freedom from physical abuse, coercion and intimidation; (2) freedom to participate in, or enjoy any benefit or service provided by the Federal or State Government; [and] (3) apply for and enjoy employment with any Federal or State Agency or union." Asserting violations of 42 U.S.C. §§ 1983 and 1985(3) and of Amendments I, V, and XIV to the United States Constitution, and invoking this Court's jurisdiction under 28 U.S.C. § 1343(3), they seek compensatory and punitive damages.

This matter is now before the Court on defendants' motion to dismiss or for summary judgment. Defendants move to dismiss pursuant to Fed.R.Civ.P. 12(b) on grounds of failure to state a claim upon which relief can be granted and of lack of

subject matter jurisdiction. They contend that plaintiffs' constitutional rights do not include protection against "exposure to and use of dangerous or addictive drugs" and hence, that their Complaint does not state a claim under 42 U.S.C. § 1983. In the alternative, defendants submit that they are entitled to summary judgment on all claims. They offer affidavits of six officers who were either members or supervisors of the LSU during plaintiffs' tenure. Each affiant avers, *inter alia*, that the LSU forbids members to use addictive drugs; that, upon discovery of an officer's drug use, the officer is immediately suspended pending a complete investigation; that the plaintiffs were not required to use drugs in order to maintain their positions with the LSU; and that the affiant had no suspicion or knowledge of plaintiffs' drug use while they were members of the LSU. On the basis of these statements, defendants assert that there are no genuine issues of material fact remaining for resolution at trial and that they are entitled to judgment as a matter of law.

Contending that the allegations in the Complaint are sufficient to state a claim under § 1983, and that there are disputed questions of fact, plaintiffs oppose the motion. They urge that the allegations support a claim for violation of their interest in personal security, a liberty interest within the meaning of the due process clause of the Fourteenth Amendment, and thus, do establish subject matter jurisdiction. In response to the motion for summary judgment, plaintiffs submit copies of their Employee Evaluations during their service on the LSU, their own affidavits, and the affidavit of Russell Wynn Rogers. In his respective affidavit, each plaintiff declares, *inter alia*, that his Supervisor, Sergeant Farrell, instructed him to use marijuana and other dangerous drugs in order to obtain arrests and that Sergeant Farrell was aware of the drug use among LSU members. Russell Rogers states that he was an informant for the LSU, and that he personally observed plaintiffs, as well as other LSU officers, use drugs in their undercover work. He recounts that Sergeant Farrell informed him that all LSU officers were trained to use marijuana and cocaine and that such drug use was part of the LSU operating procedure to secure arrests of those suspected of drug abuse. Plaintiffs argue that these affidavits raise disputed questions of fact, precluding disposition of the case on defendants' motion for summary judgment.

Having considered the pleadings, the parties' positions as set forth in their respective memoranda and supporting affidavits, and relevant statutory and case law, the Court is now fully informed and prepared to rule on the motion.

A Complaint should not be dismissed for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–56, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). Applying this principle to this Complaint, the Court will grant the motion to dismiss for failure to state a claim and for lack of subject matter jurisdiction.

■ In *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979), the Supreme Court held that § 1983 is not an Act of Congress "providing for equal rights" within the meaning of § 1343(3) or "providing for the protection of civil rights" within the meaning of § 1343(4). 441 U.S. at 617–620, 99 S.Ct. at 1915–1917. As the Court explained,

> Under § 1343(3), a civil action must be both "authorized by law" and brought to redress the deprivation of rights "secured by the Constitution of the United States or by any Act of Congress providing for equal rights." Section 1983, when properly invoked, satisfies the first requirement: It ensures that the suit will not be dismissed because not "authorized by law." But it cannot satisfy the second, since by its terms, as well as its history, it does not provide any rights at all.

441 U.S. at 618, 99 S.Ct. at 1916. In its discussion of § 1343(4), the Court indicated that the same rationale applies to suits un-

der § 1985(3). 441 U.S. at 618–20, 99 S.Ct. at 1916–1917. Therefore, plaintiffs' claims of violations of §§ 1983 and 1985(3) are insufficient to confer subject matter jurisdiction under § 1343(3).

■ Amendments I, V and XIV to the United States Constitution do, however, protect civil rights and hence, proper allegations of their violation do confer subject matter jurisdiction under § 1343(3). Thus, the Court must determine whether the allegations in the Complaint are sufficient to support these constitutional claims.

Plaintiffs assert that defendants have "acted willfully, knowingly, and purposefully" with the specific intent to deprive them of their rights to: "(1) freedom from physical abuse, coercion and intimidation; (2) freedom to participate in, or enjoy any benefit or service provided by the Federal or State Government; (3) apply for and enjoy employment with any Federal or State Agency or union." They identify the First Amendment and the due process clauses of the Fifth and Fourteenth Amendments as the sources of these rights.

■ The sole allegation which arguably states a violation of the First Amendment is that which relates to the freedom to "apply for and enjoy employment with any ... union." This statement may refer to plaintiffs' First Amendment freedom of association. However, the Complaint is devoid of any factual support for such a claim. There are no allegations that plaintiffs have sought employment with any labor union, nor that defendants have interfered with such efforts. Thus, as a matter of law, the Complaint fails to state a claim for violation of the First Amendment.

■ Because the due process clause of Amendment V is enforceable only against the federal government, *Geneva Towers Tenants Organization v. Federal Mortgage Investors*, 504 F.2d 483, 487 (9th Cir. 1974), state officials cannot be held liable for its violation. Hence, the Complaint does not state a claim under this constitutional provision.

■ Nor do these allegations state a claim under the due process clause of the Fourteenth Amendment. Assuming arguendo that the due process clause of Amendment XIV protects a citizen's right to "... freedom to participate in, or enjoy any benefit or service provided by the Federal or State Government, [and] ... apply for and enjoy employment with any Federal or State Agency or union," the Complaint does not furnish any factual basis for these alleged violations. To the extent that the Complaint asserts that the defendants' alleged mandatory drug use policy has interfered with their employment as police officers, it may support a claim for breach of contract but, as explained below, such a breach does not trigger due process protections.

■ In their brief in opposition to the motion, plaintiffs characterize the Fourteenth Amendment right upon which they rely as the "right to be free from unreasonable interference by police officers, a right which covers an individual's physical integrity" and the "right to be free from unreasonable police interference and from a gross and culpable negligent abuse of police authority." While the Court agrees with the general proposition that Amendment XIV protects these interests, the Court must conclude that they are not implicated in this case. Plaintiffs' affidavits, and the allegations in the Complaint, indicate that they were exposed to the alleged mandatory drug use in the course of their employment with the police department, and in their capacities as police officers. This fact distinguishes two cases upon which plaintiffs rely, *Jenkins v. Averett*, 424 F.2d 1228 (4th Cir. 1970), and *White v. Rochford*, 592 F.2d 381 (5th Cir. 1979). Nor does *Attreau v. Morris*, 357 F.2d 871 (7th Cir. 1966), support plaintiffs' contention that they have alleged a due process violation. In *Attreau*, the plaintiff, although a police officer, was a victim of abuse of police authority directed against him as an individual. That Complaint charged that the defendant police officers, *inter alia*, subjected him to false arrest and illegal detention, threatened to cause his discharge and imprisonment, used

perjured testimony to obtain a state indictment falsely charging plaintiff with a crime, caused the police superintendent to file baseless charges against him before the police board, and caused his unjustified suspension from the force for more than a year. All of these activities were asserted to be in furtherance of defendants' scheme to exculpate themselves, while incriminating other officers, of charges of misconduct and dereliction of duty. The Seventh Circuit held that these allegations, considered together, were adequate to state a violation of the Fourteenth Amendment.

In contrast, plaintiffs in the case at bar contend that a departmental policy, imposed on them as a condition of employment, constitutes a violation of their right to physical integrity. This argument ignores the question of the nature of the rights which the Constitution seeks to protect. The due process clause is properly invoked to secure for an ordinary citizen protection from abuse of police authority. However, the Court cannot endorse the principle that the clause may also be used to regulate the content of a police officer's employment contract. "The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions." *Bishop v. Wood*, 426 U.S. 341, 350, 96 S.Ct. 2074, 2080, 48 L.Ed.2d 684 (1976). Plaintiffs' theory, if carried to its logical conclusion, would mean that a city fire department's requirement that an officer enter a burning building in search of trapped persons, a police department's requirement that an officer carry a loaded firearm while investigating crimes, and a public hospital's requirement that an ambulance driver ignore red traffic lights when transporting a heart attack victim to the hospital, violate their respective employee's constitutional right to "physical integrity." The Court cannot endorse such a rule, and so, finds that this allegation of the Complaint does not state a due process claim.

Therefore, plaintiffs have failed to plead the deprivation of a "right ... secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens" within the meaning of § 1343(3), and thus, the Court does not have subject matter jurisdiction over this action. Accordingly, it is

ORDERED that defendants' Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b) or in the Alternative for Summary Judgment Pursuant to Fed.R.Civ.P. 56 is granted, and the Complaint is dismissed with prejudice, each party to pay his or its own costs.